1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED  STATES  DISTRICT  COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DELFINA RAMIREZ, | ) | 1:06-cv-001257-AWI-SMS |
| | ) | |
| Plaintiff, | ) | FINDINGS AND RECOMMENDATIONS RE: |
| v. | ) | PLAINTIFF'S SOCIAL SECURITY |
| | ) | COMPLAINT (DOC. 1) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

        Plaintiff  is  represented  by  counsel  and  is  proceeding  with
an  action  seeking  judicial  review  of  a  final  decision  of  the
Commissioner  of  Social  Security  (Commissioner)  denying
Plaintiff's  application  for  disability  insurance  benefits  (DIS)
and  supplemental  security  income  (SSI)  benefits  under  Titles  II
and  XVI  of  the  Social  Security  Act  (Act).  The  matter  has  been
referred  to  the  Magistrate  Judge  pursuant  to  28  U.S.C.§  636(b)
and  Local  Rule  72-302(c)(15).  The  matter  is  currently  before  the
Court  on  the  parties'  briefs,  which  have  been  submitted  without
oral  argument  to  the  Honorable  Sandra  M.  Snyder,  United  States
Magistrate  Judge.
///

1

I. <u>Procedural History</u>

On February 16, 2001, Plaintiff filed a claim for disability insurance benefits (DIB) under Title II of the Act, alleging disability due to problems with her back, legs, and shoulder beginning on September 11, 2000; and on March 13, 2002, Plaintiff filed an application for SSI benefits under Title XVI of the Act alleging disability beginning on September 11, 2000. (A.R. at 63-68, 93, 273-75.) Plaintiff's claim was denied initially and on reconsideration. (<u>Id.</u> at 43-62.) Plaintiff's request for hearing was denied by an administrative law judge (ALJ) because of Plaintiff's failure to appear at the hearing. (A.R. 283-84.) The Appeals Council vacated the dismissal and directed the ALJ to provide Plaintiff another opportunity for a hearing. (A.R. 285-88.) A hearing was held before a different ALJ of the Social Security Administration (SSA), the Honorable James E. Ross, on May 3, 2005. Plaintiff appeared with an attorney and testified before the ALJ. (A.R. 506-16.) On June 20, 2005, the ALJ denied Plaintiff's application for benefits. (<u>Id.</u> at 19-23.) Plaintiff appealed the ALJ's decision to the Appeals Council, and on July 13, 2006, the Appeals Council denied Plaintiff's the request for review. (<u>Id.</u> at 7-11.)

On September 13, 2006, Plaintiff filed the complaint in the instant action. On June 10, 2007, Plaintiff filed an opening brief. On August 10, 2007, briefing was completed with the Defendant's filing of a brief in opposition.

II. <u>Standard and Scope of Review</u>

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In

1  reviewing findings of fact with respect to such determinations,

2  the Court must determine whether the decision of the Commissioner

3  is supported by substantial evidence. 42 U.S.C. § 405(g).

4  Substantial evidence means "more than a mere scintilla,"

5  Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a

6  preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10

7  (9th Cir. 1975). It is "such relevant evidence as a reasonable

8  mind might accept as adequate to support a conclusion."

9  Richardson, 402 U.S. at 401. The Court must consider the record

10 as a whole, weighing both the evidence that supports and the

11 evidence that detracts from the Commissioner's conclusion; it may

12 not simply isolate a portion of evidence that supports the

13 decision. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.

14 2006); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  It

15 is immaterial that the evidence would support a finding contrary

16 to that reached by the Commissioner; the determination of the

17 Commissioner as to a factual matter will stand if supported by

18 substantial evidence because it is the Commissioner's job, and

19 not the Court's, to resolve conflicts in the evidence. Sorenson

20 v. Weinberger, 514 F.2d 1112, 1119 (9th Cir. 1975).

21     In weighing the evidence and making findings, the

22 Commissioner must apply the proper legal standards. Burkhart v.

23 Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must

24 review the whole record and uphold the Commissioner's

25 determination that the claimant is not disabled if the

26 Commissioner applied the proper legal standards, and if the

27 Commissioner's findings are supported by substantial evidence.

28 See, Sanchez v. Secretary of Health and Human Services, 812 F.2d

3

1  509, 510 (9th Cir. 1987); <u>Jones v. Heckler</u>, 760 F.2d at 995. If
2  the Court concludes that the ALJ did not use the proper legal
3  standard, the matter will be remanded to permit application of
4  the appropriate standard. <u>Cooper v. Bowen</u>, 885 F.2d 557, 561 (9th
5  Cir. 1987).

6     III. <u>Disability</u>

7     In order to qualify for benefits, a claimant must establish
8  that she is unable to engage in substantial gainful activity due
9  to a medically determinable physical or mental impairment which
10 has lasted or can be expected to last for a continuous period of
11 not less than twelve months. 42 U.S.C. §§ 416(i), 1382c(a)(3)(A).
12 A claimant must demonstrate a physical or mental impairment of
13 such severity that the claimant is not only unable to do the
14 claimant's previous work, but cannot, considering age, education,
15 and work experience, engage in any other kind of substantial
16 gainful work which exists in the national economy. 42 U.S.C.
17 1382c(a)(3)(B); <u>Quang Van Han v. Bowen</u>, 882 F.2d 1453, 1456 (9th
18 Cir. 1989). The burden of establishing a disability is initially
19 on the claimant, who must prove that the claimant is unable to
20 return to his or her former type of work; the burden then shifts
21 to the Commissioner to identify other jobs that the claimant is
22 capable of performing considering the claimant's residual
23 functional capacity, as well as her age, education and last
24 fifteen years of work experience. <u>Terry v. Sullivan</u>, 903 F.2d
25 1273, 1275 (9th Cir. 1990).

26    The regulations provide that the ALJ must make specific
27 sequential determinations in the process of evaluating a
28 disability: 1) whether the applicant engaged in substantial

gainful activity since the alleged date of the onset of the impairment, 20 C.F.R. § 404.1520 (1997);[1] 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities, 20 C.F.R. § 404.1520(c); 3) whether solely on the basis of medical evidence the impairment equals or exceeds in severity certain impairments described in Appendix I of the regulations, 20 C.F.R. § 404.1520(d); 4) whether the applicant has sufficient residual functional capacity, defined as what an individual can still do despite limitations, to perform the applicant's past work, 20 C.F.R. §§ 404.1520(e), 404.1545(a); and 5) whether on the basis of the applicant's age, education, work experience, and residual functional capacity, the applicant can perform any other gainful and substantial work within the economy, 20 C.F.R. § 404.1520(f).

    With respect to SSI, the five-step evaluation process is essentially the same. See 20 C.F.R. § 416.920.

    Here, the ALJ concluded that Plaintiff, who was sixty years old at the time of the hearing, had a sixth-grade education in Mexico, and had performed past relevant work as an agricultural packer and sorter, had a severe impairment consisting of lumbar strain superimposed on pre-existent degenerative disc disease but had no combination of impairments that met or medically equaled a listing; Plaintiff had the residual functional capacity (RFC) to perform light work, or lift and carry twenty pounds occasionally

---

[1] All references are to the 2005 version of the Code of Federal Regulations unless otherwise noted.

1  and ten pounds frequently, and stand, walk, and sit six hours in

2  an eight-hour work day with occasional stooping and crouching.

3  Because Plaintiff could perform her past relevant work as an

4  agricultural sorter, Plaintiff was not disabled.

5      IV. <u>Rejection of Plaintiff's Subjective Complaints</u>

6      There is no merit to Plaintiff's contention that the ALJ's

7  reasons for rejecting Plaintiff's credibility with respect to her

8  subjective symptoms were legally inadequate and unsupported by

9  adequate evidence in the record.

10      The court in <u>Orn v. Astrue</u>, 495 F.3d 625, 635 (9th Cir.

11  2007), summarized the pertinent standards for evaluating the

12  sufficiency of an ALJ's reasoning in rejecting a claimant's

13  subjective complaints:

14          An ALJ is not "required to believe every
          allegation of disabling pain" or other non-exertional
15      impairment. See <u>Fair v. Bowen</u>, 885 F.2d 597, 603 (9th
          Cir.1989). However, to discredit a claimant's testimony
16      when a medical impairment has been established, the ALJ
          must provide " 'specific, cogent reasons for the
17      disbelief.' " <u>Morgan</u>, 169 F.3d at 599 (quoting <u>Lester</u>,
          81 F.3d at 834). The ALJ must "cit[e] the reasons why
18      the [claimant's] testimony is unpersuasive." <u>Id.</u> Where,
          as here, the ALJ did not find "affirmative evidence"
19      that the claimant was a malingerer, those "reasons for
          rejecting the claimant's testimony must be clear and
20      convincing." <u>Id.</u>
              Social Security Administration rulings specify the
21      proper bases for rejection of a claimant's testimony.
          See S.S.R. 02-1p (Cum. Ed.2002), available at Policy
22      Interpretation Ruling Titles II and XVI: Evaluation of
          Obesity, 67 Fed.Reg. 57,859-02 (Sept. 12, 2002); S.S.R.
23      96-7p (Cum. Ed.1996), available at 61 Fed.Reg.
          34,483-01 (July 2, 1996). An ALJ's decision to reject a
24      claimant's testimony cannot be supported by reasons
          that do not comport with the agency's rules. See 67
25      Fed.Reg. at 57860 ("Although Social Security Rulings do
          not have the same force and effect as the statute or
26      regulations, they are binding on all components of the
          Social Security Administration, ... and are to be
27      relied upon as precedents in adjudicating cases."); see
          <u>Daniels v. Apfel</u>, 154 F.3d 1129, 1131 (10th Cir.1998)
28      (concluding that ALJ's decision at step three of the

                                6

disability determination was contrary to agency
regulations and rulings and therefore warranted
remand). Factors that an ALJ may consider in weighing a
claimant's credibility include reputation for
truthfulness, inconsistencies in testimony or between
testimony and conduct, daily activities, and
"unexplained, or inadequately explained, failure to
seek treatment or follow a prescribed course of
treatment." Fair, 885 F.2d at 603; see also Thomas, 278
F.3d at 958-59.

Further, it is established that an ALJ may rely on the
conservative nature of treatment or a lack of treatment in
rejecting a claimant's subjective complaint of pain. Johnson v.
Shalala 60 F.3d 1428, 1433-34 (9th Cir. 1995). It is permissible
to rely upon opinions of physicians concerning the nature,
severity, and effect of the symptoms of which the claimant
complains. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir.
2002). A doctor's opinion that a claimant can work is
appropriately considered. Moncada v. Chater, 60 F.3d 521, 524 (9th
Cir. 1995). The ALJ may consider whether the Plaintiff's
testimony is believable or not. Verduzco v. Apfel, 188 F.3d 1087,
1090 (9th Cir. 1999). Although the inconsistency of objective
findings with subjective claims may not be the sole reason for
rejecting subjective complaints of pain, Light v. Chater, 119
F.3d 789, 792 (9th Cir. 1997), it is one factor which may be
considered with others, Moisa v. Barnhart, 367 F.3d 882, 885 (9th
Cir. 2004); Morgan v. Commissioner 169 F.3d 595, 600 (9th Cir.
1999).

Here, the ALJ expressly considered Plaintiff's subjective
complaints. (A.R. 20.) He recited Plaintiff's testimony that she
quit working in September 2000 after an injury to her back; had
constant back pain involving the mid-back radiating to both arms

7

and an inability to perform bending, stooping, or twisting without pain; could stand only two hours, walk less than one hour, and lift six to eight pounds; and was limited to daily activities of shopping, doing no cooking or cleaning, attending church two to four Sundays a month, and driving only in an emergency. (A.R. 21.)

The ALJ found that although her impairments could reasonably be expected to produce some symptoms, the degree of limitation alleged was not supported by the objective medical evidence and was not entirely credible. (A.R. 20.)

The ALJ detailed the objective medical evidence, considered but put very little weight on the only contrary opinion of Dr. Wageneck from February 2005, and relied on the opinions of specific examining physicians and the state agency medical consultants concerning Plaintiff's abilities to perform work activities. (A.R. 20-21.) In reviewing the evidence, the ALJ noted and relied on the opinions of multiple physicians that Plaintiff had essentially normal examinations with no clinical signs consistent with the claimed degree of limitation; further, he noted that Plaintiff had conservative treatment (A.R. 20), the physicians had opined that Plaintiff was capable of working (id.), Plaintiff exhibited reluctance to perform usual maneuvers required for physical examinations that were normal for women in her age group, Plaintiff had not participated well in physical therapy (A.R. 20), Plaintiff repeatedly exhibited symptom magnification during functional capacity evaluation by her rehabilitation therapist and manifested profound symptom embellishment to her consulting examiner with giveaway weakness

8

of both upper and lower extremities, and she was evaluated by her
treating physician as having no credibility whatsoever in her
description of complaints (A.R. 21).

Substantial evidence supported the ALJ's reasons.

First, a review of the objective medical evidence shows that
it was inconsistent with Plaintiff's subjective complaints, and
there was substantial evidence supporting the ALJ's findings that
treating and evaluating practitioners had found that Plaintiff
retained an RFC to perform work activities.

Plaintiff sustained an injury to the low back and right knee
and ankle from slipping on a piece of waxed paper at work in
September 2000; the ankle and knee pain resolved, but her
complaints of pain in the back did not. Dr. Richard H. Thorp, a
neurological surgeon, examined Plaintiff in December 2000 after
Plaintiff had attempted physical therapy but claimed to continue
to have constant low-grade low back pain extending into the
posterior thigh and down to the foot, with numbness and tingling
in both feet. (A.R. 174.) He concluded that from an objective
point of view, Plaintiff had recovered satisfactorily from her
fall based on findings that she had a normal neurological and
general physical exam; her straight leg raising maneuvers were
ninety degrees on either side with a negative Lasegue's maneuver;
there was normal sensory exam, normal motor exam with normal tone
and no evidence of atrophy; deep tendon reflexes were
symmetrically equal; and extremities were within normal limits.
Further, the MRI of October 9, 2000, revealed only a minor bulge
within normal limits for a woman in Plaintiff's age group; it did
not appear to contact or involve the S1 nerve roots on either

9

1  side, and there was normal cushioning around the nerve roots.

2  (A.R. 174-78.)

3      Plaintiff's primary treating physician reported after a

4  physical examination in February 2001 that despite treatment with

5  modified work duty, anti-inflammatory medication, analgesics, and

6  physical therapy, Plaintiff continued to complain of lower back

7  pain; examination revealed full range of motion in the back

8  without spasm or tenderness; there were no objective physical

9  findings to support the patient's subjective complaints; previous

10 tests revealed only mild degenerative joint disease at L4-5 and

11 L5-S1, mild osteoporosis, a three millimeter central disc

12 protrusion at L5-S1 without disc bulge, protrusion, or extrusion,

13 and with widely patent neural foramina; the diagnosis was lumbar

14 sprain/strain, with subjective complaints unsupported by

15 objective findings. (A.R. 192-94.)

16     Treating orthopaedic surgeon Dr. John L. Branscum opined

17 after examining Plaintiff on March 5, 2001, that despite

18 Plaintiff's claim of worsening symptoms, Plaintiff was permanent

19 and stationary; Plaintiff complained of subjective pain and

20 tenderness in the back and numbness and tingling in both legs,

21 but the physical examination revealed no objective findings; the

22 MRI showing the disc protrusion at L5-S1 was the only abnormality

23 shown by the MRI and had no clinical significance because there

24 was no root compression, and the neural foramina were widely

25 patent; Plaintiff's mild degenerative disc disease at L5-S1 would

26 preclude only very heavy lifting (anything over sixty pounds on a

27 one-time basis, or over thirty pounds repetitively) on a

28 prophylactic basis; no further medical care was needed, and

1  Plaintiff could return to her usual and customary occupation.
2  (A.R. 218-24.)

3      Consulting orthopaedic surgeon Dr. Charles J. Heller, M.D.
4  concluded after examining Plaintiff in August 2001 that despite
5  her complaints of constant low back pain of nine on a scale of
6  one to ten with radiation to the extremity from the hip and with
7  occasional numbness of both legs, the examination revealed
8  tenderness over the lumbosacral spine with no paravertebral
9  muscle spasm; twenty per cent of flexion and ten per cent of
10 extension, but at times there was a full range of motion of the
11 back; and although Plaintiff refused to perform straight leg
12 raising more than twenty degrees bilaterally, at times there was
13 almost a full straight leg raising without pain. Dr. Heller found
14 Plaintiff to have been permanent and stationary in March 2001,
15 and he diagnosed lumbar strain resulting only in precluding
16 Plaintiff from lifting over twenty-five pounds prophylactically.
17 It was recommended that she should be given oral anti-
18 inflammatory medications and continue on an exercise program.
19 (A.R. 252-60.)

20     In September 2002, agreed medical examiner Dr. Rolf G.
21 Scherman examined Plaintiff, who continued to complain of
22 constant pain in the back and both legs but without weakness or
23 numbness in the legs. Dr. Scherman found diffused tenderness over
24 the lower back without any muscle spasm, reduced lateral flexion
25 and extension, no pain on straight leg raising at ninety degrees,
26 no weakness or atrophy of the legs, normal sensory testing, and
27 knee and ankle jerks that were 1+ and equal. He noted that MRI
28 studies revealed no disc herniation or findings of radiculopathy.

1  The only findings were restriction of back movements; he opined
2  that she could not engage in heavy lifting and was unable to
3  return to her usual and customary job. (A.R. 261-66.)

4      In September 2003, Dr. Michael Duffy examined Plaintiff, who
5  sought his help in obtaining Social Security disability. Dr.
6  Duffy stated that he in turn told Plaintiff that unless her
7  condition had changed significantly, he doubted that the outcome
8  would be any different, and he recommended treatment with
9  nonsteroidal anti-inflammatory medication and offered a referral
10 to a specialist if needed. (A.R. 394.) In April 2004, Plaintiff
11 again requested assistance with disability, and Dr. Duffy
12 reported that he saw no evidence the Plaintiff's condition had
13 changed significantly and thus was not willing to grant permanent
14 disability. (A.R. 393.)

15     In March 2004 Dr. Richard J. Hammond examined Plaintiff, who
16 complained of constant back pain radiating in the legs to her
17 toes, and primarily on the right. Plaintiff was in no acute
18 distress; motor strength was 5/5 in the upper and lower
19 extremities with normal, rapid, alternating movements and tone;
20 reflexes were 1+ throughout, sensory exam was normal to light
21 touch, and gait and station were normal; there was minimal spasm
22 of the lumbar paraspinals, and they were moderately tender to
23 palpation, but there was no other significant spasm of her neck
24 or back. The only abnormality shown by an MRI report was a three
25 millimeter disc protrusion at L5-S1. Dr. Hammond concluded that
26 Plaintiff would have no difficulty doing a job that required
27 sitting, standing, walking, lifting, carrying, handling objects,
28 hearing, speaking, or traveling. (A.R. 387-88.)

In March 2004, state agency physician Dr. Thomas T. Coolidge opined that Plaintiff could perform light work (lift twenty pounds occasionally, ten pounds frequently, six, stand, and walk about six hours in an eight-hour workday) with only occasional kneeling and crouching, and avoidance of concentrated exposure to vibrations. (A.R. 411-19.)

In May 2004, state agency physician Leslie Arnold, M.D., agreed with Dr. Coolidge's assessment. (A.R. 418.)

There was the contrary opinion of treating physician, Dr. Wageneck, that Plaintiff in February 2005 could only lift a maximum of ten pounds occasionally, three to four pounds frequently, walk four hours in an eight-hour day but only thirty minutes without interruption, and never climb, stoop, kneel, balance, crouch, or crawl, with instability at heights and inability to move machinery. (A.R. 420-22.) However, the objective medical evidence was overwhelmingly consistent with the ALJ's characterization of it, and thus, substantial evidence supported the ALJ's reasoning.

The Court further concludes that substantial evidence supports the ALJ's finding that Plaintiff had exaggerated her symptoms or had failed to give adequate effort during examinations.

In December 2000, consulting neurosurgeon Dr. Thorp noted that Plaintiff spontaneously moved remarkably easily, rose rapidly, walked without a limp, and was able to climb on to the table and perform all the usual activity required without apparent discomfort; however, Plaintiff refused to perform a range of back movement, and he concluded:

1  I do not feel that she has sustained any
2  injury to the back or to the neural elements
   which would support her symptomatology. I think
3  she should be able to perform those activities any
   woman in her age group would normally perform.

4  (A.R. 176.)

5      In January 2001, in the course of performing a functional
6  capacity evaluation for work activity, physical therapist James
7  Bolich concluded that after performing a section of the
8  evaluation that was to determine if Plaintiff was displaying
9  symptom magnification behavior, the test results revealed that
10 Plaintiff was magnifying symptoms on fifty per cent of the tests
11 concerning superficial stroking to upper back and posterior
12 thighs, passive great toe flexion/extension on right and left,
13 passive knee toggle on the right and left sides, and axial
14 loading. (A.R. 181.) He concluded that Plaintiff's desire to work
15 was a separate question from her capacity. He stated:

16     Mrs. Ramirez seemed annoyed to be in the clinic setting
       and gave the impression that it was a waste of time to
17     be here. Mrs. Ramirez' limitations with activities were
       only limited by her desire to work. She did not want to
18     work at any activity that she thought might increase
       her subjective pain. Therefore, it became extremely
19     difficult to assess her true safe maximal abilities.

20 (A.R. 181.) His final conclusion was that Plaintiff displayed a
21 tendency to over-project her symptom complex. (A.R. 182.)

22     Plaintiff's primary treating physician, Dr. Joaquin Oliver,
23 concluded after an essentially normal examination in February
24 2001 that Plaintiff could do the same activities that she could
25 before the illness, and the only future medical treatment
26 indicated was over-the-counter medication. (A.R. 192-94.) He
27 concluded:

28     In view of the reports from the Physical Therapist and

14

> Dr. Thorp, and the results of the Functional Capacity
> Evaluation, it is my professional opinion, based on 42
> years of experience in family practice and 20 years
> of experience in treating industrial injuries, that the
> patient has no credibility whatsoever in her description
> of her complaints. I believe that she has at most
> constant, minimal pain in the lumbar area *with no loss
> of working capacity.*

(A.R. 194.)

Consulting orthopedist Dr. Charles Heller examined Plaintiff in August 2001. He found subjective complaints with no objective findings. (A.R. 255.) On the credibility testing portion of the exam, Dr. Heller reported inappropriate findings for axial loading, passive rotation, distraction test, diffuse tenderness, non-anatomic nerve distribution, histrionic movements, and reverse sciatic tension test. (A.R. 255.)

In March 2004, Dr. Hammond observed after examining Plaintiff that Plaintiff had very poor effort and profound giveaway throughout, poor effort during range of motion, and would not allow leg bending beyond thirty degrees or straight leg raising while supine. (A.R. 388.) Dr. Hammond's exam produced essentially normal findings. He concluded in pertinent part:

> Mrs. Ramirez complains of significant low back pain
> but she has a completely normal exam. She has profound
> embellishment of her symptoms with giveaway weakness of
> both upper and lower extremities. She will not allow me
> to do straight leg raising greater than 30 degrees supine
> while it was 90 degrees sitting without any pain. She
> has very poor effort during the exam. There was no
> significant muscle spasm in her lumbar paraspinals....

(A.R. 388.)

Thus, the record supports the ALJ's findings concerning Plaintiff's exaggeration of her symptoms.

Plaintiff argues that the ALJ's failure to mention Plaintiff's hyperthyroidism or hyperparathyroidism and to include

them in his assessment of credibility was legal error because the conditions are likely to produce pain.

The Court notes that the ALJ recited all Plaintiff's testimony concerning her pain; further, he expressly stated that Plaintiff's impairments could reasonably be expected to produce some of the symptoms she alleged. (A.R. 21-22, 20.) The ALJ had obviously reviewed the records concerning Plaintiff's thyroid condition and treatment because he referred to them in his review and evaluation of Dr. Wageneck's medical assessment and his treating records. (A.R. 21 [referring to Ex. 25F, pp. 1-15, constituting A.R. 491-505].)

The records reflect that in September 2004 through April 2005, Plaintiff complained to Dr. Wageneck of unspecified, diffuse bone pain and myalgias after having been diagnosed by another doctor with hyperparathyroidism; Dr. Wageneck diagnosed primary hyperparathyroidism with myalgia and cephalgia likely secondary to primary hyperparathyroidism, and he referred her to an ear, nose, and throat surgeon for resection of her parathyroid glands. Plaintiff's treatment by Dr. Wageneck consisted of laboratory tests and medications. However, Plaintiff also was suffering cervical spine strain at the time, and she was apparently prescribed Flexeril, Bextra, and Tylenol for those symptoms (A.R. 496, 493.) She was also encouraged to start a walking program and to follow the South Beach Diet for weight loss and musculoskeletal pain. (A.R. 493.)

It therefore does not appear that the ALJ failed to consider Plaintiff's thyroid condition or failed to consider any specific subjective claims arising therefrom. It does not appear that the

ALJ erred in a manner that would implicate the validity of the ALJ's assessment of Plaintiff's credibility.

However, should the ALJ have erred in not specifically referring to Plaintiff's thyroid condition in the credibility analysis, the Court concludes that Plaintiff has not demonstrated that any harm resulted therefrom. The particular analytical step affected, namely, that of whether or not Plaintiff had pain and whether or not her impairments reasonably could have been expected to produce some of the symptoms she alleged, were resolved in Plaintiff's favor. See, Stout v. Commissioner, 454 F.3d 1050 (9th Cir. 2006). Further, as will be discussed infra, the ALJ specifically evaluated Dr. Wageneck's assessment of Plaintiff's functional capacity and rejected it in part because of Dr. Wageneck's chart notes concerning Plaintiff's conditions, including her thyroid condition, did not support his functional assessment, and further because Dr. Wageneck based his functional capacity assessment entirely on Plaintiff's subjective complaints, to which the ALJ assigned very little weight. (A.R. 21.)

The Court concludes that the ALJ cited clear and convincing reasons for rejecting Plaintiff's subjective complaints of pain to the extent alleged, and that the ALJ's reasons were properly supported by the record and sufficiently specific to allow this Court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony.

V. Failure to Include an Impairment

Plaintiff argues that the ALJ's failure to mention

17

1  Plaintiff's hyperthyroidism or hyperparathyroidism "in his
2  assessment" was erroneous and contrary to the SSA's duty to
3  consider the combined effects of all a claimant's impairments
4  without regard to whether any single impairment would be of such
5  severity. It therefore appears that Plaintiff is referring to a
6  failure at the second step of the five-step analysis.

7       At step two, the Secretary considers if claimant has "an
8  impairment or combination of impairments which significantly
9  limits his physical or mental ability to do basic work
10 activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). This is
11 referred to as the "severity" requirement and does not involve
12 consideration of the claimant's age, education, or work
13 experience. Id. The step-two inquiry is a de minimis screening
14 device to dispose of groundless claims. Bowen v. Yuckert, 482
15 U.S. 153-54 (1987). The Secretary is required to "consider the
16 combined effect of all of the individual's impairments without
17 regard to whether any such impairment, if considered separately,
18 would be of [sufficient medical] severity." 42 U.S.C. §
19 1382c(a)(3)(F).

20      Basic work activities include the abilities and aptitudes
21 necessary to do most jobs, such as physical functions of walking,
22 standing, sitting, lifting, pushing, pulling, reaching, carrying,
23 or handling; capacities for seeing, hearing, and speaking;
24 understanding, carrying out, and remembering simple instructions;
25 use of judgment; responding appropriately to supervision, co-
26 workers and usual work situations; and dealing with changes in a
27 routine work setting. 20 C.F.R. §§ 404.1521(b), 416.921(b).

28      An impairment or combination thereof is not severe when

18

medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work. An impairment is not severe if it does not significantly limit a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a); Soc. Sec. Ruling 85-28; <u>Smolen v. Chater</u>, 80 F.3d 1273, 1289-90 (9th Cir. 1996).

As previously noted, it is Plaintiff's burden to establish disability; thus, with respect to severity, it is Plaintiff's burden to prove that the impairment had a functionally limiting effect. Here, Plaintiff points to no evidence that Plaintiff's thyroid condition had any effect on Plaintiff's ability to perform work activities other than Dr. Wageneck's opinion.

Accordingly, substantial evidence supports the ALJ's implicit decision that Plaintiff's thyroid condition was not a severe impairment, but rather had no more than a minimal effect on Plaintiff's ability to work. <u>See</u>, <u>Webb v. Barnhart</u>, 433 F.3d 683, 686-87 (9th Cir. 2005).

VI. <u>Treatment of the Expert Opinions</u>

Plaintiff argues that the ALJ erred in his treatment of two of the expert medical opinions.

The pertinent legal standards were recently summarized:

> The opinions of treating doctors should be given more weight than the opinions of doctors who do not treat the claimant. <u>Lester [v. Chater</u>, 81 F.3d 821, 830 (9th Cir.1995) (as amended).] Where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record. <u>Id.</u> (internal quotation marks omitted). Even if the treating doctor's opinion is contradicted by

1
2
3
4
5
6
7
8

> another doctor, the ALJ may not reject this opinion
> without providing "specific and legitimate reasons"
> supported by substantial evidence in the record. <u>Id.</u> at
> 830, quoting <u>Murray v. Heckler</u>, 722 F.2d 499, 502 (9th
> Cir.1983). This can be done by setting out a detailed
> and thorough summary of the facts and conflicting clinical
> evidence, stating his interpretation thereof, and making
> findings. <u>Magallanes [v. Bowen</u>, 881 F.2d 747, 751 (9th
> Cir.1989).] The ALJ must do more than offer his
> conclusions. He must set forth his own interpretations
> and explain why they, rather than the doctors', are
> correct. <u>Embrey v. Bowen</u>, 849 F.2d 418, 421-22 (9th
> Cir.1988).
>   <u>Reddick v. Chater</u>, 157 F.3d 715, 725 (9th Cir.1998);
> accord <u>Thomas</u>, 278 F.3d at 957; <u>Lester</u>, 81 F.3d at
> 830-31.

9
10

<u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007).

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

     Further, the medical opinion of a nontreating doctor may be

relied upon instead of that of a treating physician only if the

ALJ provides specific and legitimate reasons supported by

substantial evidence in the record. <u>Holohan v. Massanari</u>, 246

F.3d 1195, 1202 (9th Cir. 2001) (citing <u>Lester v. Chater</u>, 81 F.3d

821, 830 (9th Cir. 1995)). The contradictory opinion of a

nontreating but examining physician constitutes substantial

evidence, and may be relied upon instead of that of a treating

physician, where it is based on independent clinical findings

that differ from those of the treating physician. <u>Andrews v.</u>

<u>Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995). The opinion of a

nontreating, nonexamining physician can amount to substantial

evidence as long as it is supported by other evidence in the

record, such as the opinions of other examining and consulting

physicians, which are in turn based on independent clinical

findings. <u>Andrews v. Shalala</u>, 53 F.3d at 1041.

27
28

          A. <u>Dr. Scherman</u>

     Plaintiff argues that the ALJ erred in not addressing the

portion of the opinion of Dr. Scherman in which the doctor stated that Plaintiff was unable to return to her usual and customary job. (A.R. 265.)

In September 2002, agreed medical examiner Dr. Rolf G. Scherman examined Plaintiff, who continued to complain of constant pain in the back and both legs but without weakness or numbness in the legs. Dr. Scherman found diffused tenderness over the lower back without any muscle spasm, reduced lateral flexion and extension, no pain on straight leg raising at ninety degrees, no weakness or atrophy of the legs, normal sensory testing, and knee and ankle jerks that were 1+ and equal. He noted that MRI studies revealed no disc herniation or findings of radiculopathy. The only findings were restriction of back movements; he opined that she could not engage in heavy lifting and was unable to return to her usual and customary job. (A.R. 261-66.)

The ALJ noted Dr. Scherman's diagnosis of lumbar strain superimposed on pre-existent degenerative disc disease. (A.R. 20 [citing to Ex. 8F p. 5, or A.R. 265].) He then stated that Plaintiff underwent extensive evaluations and treatment from many specialists resulting in a wide range of opinions concerning Plaintiff's condition and work-related abilities. (A.R. 20.) The ALJ recited the various opinions, stating in part the following:

> In March 2001, orthopedic surgeon Dr. Branscum opined that the claimant was permanent and stationary and could perform work involving not lifting over 60 pounds on a one-time basis or over 30 pounds repetitively (Exhibit 5F, p. 7). In August 2001, Qualified Medical Examiner Dr. Heller concluded that at the present time the claimant would be able to lift 25 pounds (Exhibit 7F, p. 7). In September 2002, Agreed Medical Examiner, Dr. Scherman agreed with Drs. Heller and Branscum that the claimant was permanent and stationary and should be precluded

21

1    from heavy lifting (Exhibit 8F, p. 5).

2    (A.R. 21.)

3        A fundamental principle of review operative in this case is

4    that this Court is limited to reviewing the findings of the ALJ

5    and to reviewing the specific facts and reasons that the ALJ

6    asserts. Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)

7    (holding in part that the mere presence of evidence in the record

8    that would support an ALJ's conclusions, in the absence of the

9    ALJ's discussion thereof, was insufficient). An ALJ need not

10   discuss evidence that is neither significant nor probative.

11   Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003). However,

12   with respect to significant, probative evidence, such as an

13   expert opinion, an ALJ must explicitly reject the opinion and set

14   forth specific reasons of the requisite force for doing so.

15   Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996) (holding

16   that the ALJ erred in failing to explicitly reject an opinion and

17   set forth specific, legitimate reasons for crediting another

18   opinion). The district court cannot make findings for the ALJ.

19   Id. A district court cannot affirm the judgment of an agency on a

20   ground the agency did not invoke in making its decision. Pinto v.

21   Massanari, 249 F.3d 840, 847-48 (9th Cir. 2001). Even application

22   of the harmless error rule is circumscribed by this basic

23   requirement. It has recently been held that where an error

24   consists of an ALJ's failure to discuss probative evidence

25   properly, a reviewing court cannot consider the error harmless

26   unless it can confidently conclude that no reasonable ALJ, when

27   fully crediting the evidence, could have reached a different

28   disability determination. Stout v. Commissioner of Social

1  Security, 454 F.3d 1050, 1056 (9th Cir. 2006) (concluding that an

2  ALJ's failure to evaluate and state reasons for evaluating lay

3  testimony was not harmless). The authorities thus reflect the

4  fundamental principle that the ALJ's opinion must contain

5  sufficient findings to permit intelligent judicial review,

6  particularly with respect to significant probative evidence.

7  Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984).

8      Here, it is clear from an examination of the decision that

9  the ALJ did not fail to consider or evaluate Dr. Scherman's

10  opinion. Instead, the ALJ considered it and interpreted it as

11  being essentially consistent with the other decisions that the

12  ALJ addressed, including those of Drs. Branscum and Heller, which

13  primarily addressed Plaintiff's lifting capacity. Indeed, Dr.

14  Scherman expressly interpreted those two doctors' opinions as

15  precluding heavy lifting. (A.R. 263-64.) Dr. Scherman further

16  expressly stated, "I also agree with Dr. Branscum on the level of

17  disability, namely a disability precluding heavy lifting." (A.R.

18  265.)

19      It is true that the ALJ failed to mention in his decision

20  the part of Dr. Scherman's opinion that Plaintiff could not

21  return to her usual and customary job. However, the decision also

22  contains the ALJ's assessment of Plaintiff's past relevant work.

23  The ALJ noted Plaintiff's former work as an agricultural sorter

24  at a packing house, concerning which Plaintiff testified that she

25  had to lift twenty to twenty-five pounds. (A.R. 21.) Further, the

26  ALJ noted that pursuant to the Dictionary of Occupational Titles,

27  Plaintiff's past relevant work as an agricultural sorter as

28  generally performed in the national economy was classified as

23

1   light work and required lifting no more than twenty pounds
2   occasionally. (A.R. 21, 22.) Likewise, the ALJ clearly credited
3   the consistent opinions of most of the doctors to the effect that
4   Plaintiff's limitation was a preclusion against heavy lifting,
5   which had been expressly described or limited by those experts as
6   affecting lifting of over twenty-five pounds. It therefore
7   appears that the ALJ credited the portion of Dr. Scherman's
8   opinion that was consistent with all the other opinions and that
9   was necessary to his conclusion, namely, that Plaintiff could
10   engage in work that involved lifting no more than twenty pounds.

11      To the extent that Dr. Scherman opined that Plaintiff could
12   not return to her previous work, it was apparently not an opinion
13   that precluded working while lifting less than twenty-five pounds
14   or that was otherwise was inconsistent with the affirmative RFC
15   found by the ALJ. It therefore appears that to the extent
16   required for the RFC assigned by the ALJ, the ALJ considered the
17   pertinent significantly probative evidence, assigned weight to it
18   to the extent that it was consistent with the other substantial
19   medical opinions of record and was based on significant objective
20   findings, and adequately stated reasons for the record.

21      Plaintiff's contention that the report of Dr. Scherman must
22   be interpreted or weighed in a particular fashion because it was
23   generated within a state worker's compensation system is not
24   meritorious. The opinion of Dr. Scherman and the similar opinions
25   of other experts were specific with respect to precise lifting
26   capacities; within the specific context of the present case, the
27   Court does not find any significant likelihood of confusion or
28   misinterpretation.

24

1    The Court concludes that the ALJ cited specific and

2 legitimate reasons, supported by substantial evidence, in support

3 of his weighing of Dr. Scherman's opinion.

4         B. Dr. Wageneck

5    Dr. Robert Wageneck examined Plaintiff in May 2003, found

6 her to be asymptomatic and suffering from malaise, and noted that

7 it was somewhat unclear as to why Plaintiff was there (A.R. 504);

8 he treated her and oversaw her treatment for mild

9 hyperparathyroidism in 2004 and 2005 and encouraged her to start

10 an exercise walking program (A.R. 493, 498, 503). In February

11 2005, Dr. Wageneck completed a medical assessment of Plaintiff's

12 ability to do work-related activities, and concluded that based

13 on Plaintiff's reported ability to carry, she could lift a

14 maximum of ten pounds occasionally, three to four pounds

15 frequently, walk four hours in an eight-hour day but only thirty

16 minutes without interruption; and Plaintiff could never climb,

17 stoop, kneel, balance, crouch, or crawl. Further, Plaintiff was

18 unstable at heights and unable to move machinery due to lack of

19 strength because of Plaintiff's weakness and pain. (A.R. 420-22.)

20 Again, the restrictions were expressly based on the patient's

21 report. (A.R. 420-21.)

22    The ALJ referred to Dr. Wageneck's opinion that Plaintiff

23 had the capacity for sedentary work, but he concluded that the

24 opinion was not consistent with the doctor's own treating records

25 and further was based entirely on the Plaintiff's subjective

26 complaints. Accordingly, the ALJ gave very little weight to Dr.

27 Wageneck's opinion. (A.R. 21.)

28    Substantial evidence supports the ALJ's finding that Dr.

25

1 Wageneck's functional limitations were based on Plaintiff's
2 subjective complaints. The doctor relied on Plaintiff's
3 statements of pain, weakness, or more generally on the patient's
4 report in all instances except with respect to Plaintiff's
5 inability to move machinery, which was based on Plaintiff's lack
6 of strength. (A.R. 420-22.) As has been previously analyzed, the
7 ALJ's rejection of Plaintiff's subjective complaints was
8 supported by substantial evidence and was based on proper legal
9 standards. Where the record supports an ALJ's rejection of the
10 claimant's credibility as to subjective complaints, the ALJ is
11 free to disregard a doctor's opinion that was premised upon the
12 claimant's subjective complaints. <u>Tonapetyan v. Halter</u>, 242 F.3d
13 1144, 1149 (9th Cir. 2001).

14      Likewise, Dr. Wageneck's treatment notes referred to by the
15 ALJ (A.R. 21, A.R. 491-505 [Ex. 25F pp. 1-15]) are inconsistent
16 with the doctor's conclusion that Plaintiff could lift only three
17 to four pounds frequently and ten occasionally, walk a total of
18 four hours and no more than half an hour at a time, and never
19 climb, stoop, kneel, balance, crouch, or crawl. Plaintiff was
20 asymptomatic in May and June 2003 (A.R. 503-04.) She complained
21 of bone pain in September 2004, but no abnormalities were noted
22 in the examination in September; diffuse bone pain and multiple
23 somatic complaints mostly related to myalgias were reported in
24 October 2004; and she reported pain in the back of the head in
25 November 2004, at which time she also complained of pain in the
26 cervical spine accompanied by findings on examination of moderate
27 to severe spasm that affected the range of motion of the cervical
28 spine, which was treated with Flexeril and Tylenol. (A.R. 496-98,

1  502.) In December 2004, Plaintiff reported body ache and
2  headaches for a few days, but there were no findings upon
3  examination, and Plaintiff was treated with medication and
4  referral to a specialist. (A.R. 494.) In January 2005, Plaintiff
5  reported that a consulting endocrinologist opined that
6  Plaintiff's hyperparathyroidism was mild and possibly related to
7  her thyroid disorder; there was no malignancy but a multinodular
8  goiter, and Plaintiff was started on propylthiouracil; her chief
9  complaint was cervicothoracic pain that was worse with exertion,
10 but Plaintiff did walk. Dr. Wageneck found moderate tenderness to
11 palpation in the cervical spine and painful range of motion of
12 the cervical and thoracic spine, but no obvious deformity. His
13 assessment was hyperparathyroidism, multinodular goiter, obesity,
14 and cervicothoracic strain, to be treated with Bextra for
15 musculoskeletal pain, as well as walking, exercise, medication,
16 and monitoring of free T4 and TSH. (A.R. 493.)

17      The treatment notes do not reflect findings on examination,
18 assessments, or courses of treatment that were consistent with an
19 impairment so severe that Plaintiff was rendered unable to
20 perform all but sedentary work. Plaintiff was treated with anti-
21 inflammatory medications only and was encouraged to improve her
22 diet and to exercise. The Court thus concludes that substantial
23 evidence supported the ALJ's reasoning that Dr. Wageneck's
24 treatment notes did not support his functional assessment.

25      Therefore, the Court concludes that the ALJ stated specific
26 and legitimate reasons, based on substantial evidence, for his
27 weighing of the expert opinions.

28 /////

1   VII. <u>Recommendation</u>

2      Pursuant to the foregoing analysis, it is concluded that
3   Plaintiff's arguments should be rejected. The ALJ's decision was
4   reached by the use of proper legal standards and is supported by
5   substantial evidence.

6      Accordingly, it IS RECOMMENDED that

7      1. Plaintiff's social security complaint BE DENIED; and

8      2. Judgment for Defendant Michael J. Astrue, Commissioner of
9   Social Security, and against Plaintiff Delfina Ramirez, BE
10  ENTERED.

11     This report and recommendation is submitted to the United
12  States District Court Judge assigned to the case, pursuant to the
13  provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 72-304 of the
14  Local Rules of Practice for the United States District Court,
15  Eastern District of California. Within thirty (30) days after
16  being served with a copy, any party may file written objections
17  with the court and serve a copy on all parties. Such a document
18  should be captioned "Objections to Magistrate Judge's Findings
19  and Recommendations." Replies to the objections shall be served
20  and filed within ten (10) <u>court</u> days (plus three days if served
21  by mail) after service of the objections. The Court will then
22  review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636
23  (b)(1)(C). The parties are advised that failure to file
24  ///
25  ////
26  /////
27  //////
28  ///////

1  objections within the specified time may waive the right to

2  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d

3  1153 (9th Cir. 1991).

4

5  IT IS SO ORDERED.

6  **Dated:    January 30, 2008                        /s/ Sandra M. Snyder**
                                    UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28